IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES ALBERT FRAZIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:09-CV-00179 |
| | § | |
| MICHAEL J. ASTRUE | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
## REMANDING THIS CASE TO THE COMMISSIONER FOR FURTHER
## PROCEEDINGS

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary

Judgment and Memorandum in Support (Document No. 14) and Defendant's Motion for

Summary Judgment and Brief in Support (Document No. 17). Upon consideration of the motions

for summary judgment, supporting documents, the administrative record, and the applicable law,

the Court ORDERS, for the reasons set forth below, Plaintiff's Motion for Summary Judgment

(Document No. 14) is GRANTED, Defendant's Motion for Summary Judgment (Document No.

14) is DENIED, and this case is REMANDED to the Commissioner of the Social Security

Administration for further proceedings.

---

[1] On February 27, 2009, pursuant to the parties' consent, this case was transferred by the District
Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 4.

## I.    Introduction

Plaintiff Charles Albert Frazier ("Frazier") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

Frazier alleges two points of error. In his first point of error, Frazier argues the decision of the Administrative Law Judge ("ALJ") as to Frazier's residual functioning capacity ("RFC") is not supported by substantial evidence on the record. Specifically, the ALJ found Frazier "retained the [mental] ability to get along with others, understand detailed instructions, concentrate and perform detailed tasks[,] and respond and adapt to workplace changes and supervision." (Tr. 19).  Frazier argues this determination is not supported by substantial evidence. *See* Plaintiff's Brief (Pl.'s Br.) at 3.

In response, the Commissioner argues substantial evidence on the record does, in fact, support the ALJ's assessment of Frazier's mental RFC. The Commissioner argues the record does not contain sufficient evidence of Frazier's mental impairment during the relevant time period, and therefore Frazier failed to satisfy his burden of proof. While the Commissioner admits there is evidence on the record pertaining to Frazier's mental impairment, the Commissioner maintains such evidence is irrelevant to the inquiry at hand as the evidence is outside the relevant time period. *See* Defendant's Brief (Def.'s Br.) at 6.

In his second point of error, Frazier argues the ALJ applied improper legal standards in reaching his decision by failing to obtain testimony from a medical expert or to require Frazier to undergo a psychiatric consultation in order to determine the onset date of Frazier's mental

impairment. Frazier argues a psychiatric consultation was required in order to ensure a determination based on a complete and fully developed record. *See* Pl.'s Br. at 11.

In response to Frazier's second point of error, the Commissioner argues the ALJ was not required to obtain testimony from a medical expert or to require Frazier undergo a psychiatric consultation. The Commissioner argues this decision remains within the discretion of the ALJ. Def.'s Br. at 9.

Frazier requests the Commissioner's decision be reversed and an order rendered awarding him benefits or, in the alternative, the decision be remanded for further proceedings. The Commissioner, in contrast, requests his decision be affirmed.

## II.    Administrative Proceedings

Frazier applied for disability insurance benefits ("DIB") on September 14, 2006, alleging his disability began June 30, 1994 due to osteoarthritis of the right knee and left upper extremity, hypertension, depression, posttraumatic stress disorder (PTSD), and a history of substance abuse. (Tr. 12; 14-15). The Social Security Administration denied his application at the initial stage on October 25, 2006 and upon reconsideration on March 14, 2007. (Tr. 12). Frazier then requested a hearing before an ALJ. (Tr. 12). The Social Security Administration granted Frazier's request and the ALJ, Gary J. Suttles, held a hearing on April 11, 2008. (Tr. 12). At this hearing, Frazier's claims were considered *de novo*. (Tr. 43). On May 16, 2008, the ALJ issued a decision finding Frazier not disabled. (Tr. 9-22).

The ALJ followed the five-step process for determining whether a candidate is eligible for disability insurance benefits under the Social Security Act. (Tr. 13-14). At step one, the ALJ determined Frazier did not engage in substantial gainful activity between his alleged onset date of June 30, 1994, and his last date insured ("LDI") of December 31, 1997. (Tr. 14). At step two,

the ALJ determined Frazier suffered from a combination of severe impairments, including osteoarthritis of the right knee and left upper extremity, hypertension, depression, PTSD, and a history of substance abuse. (Tr. 14-15). At step three, the ALJ determined Frazier's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 15). At step four, the ALJ determined Frazier retained an RFC to perform light work. (Tr. 16). Further, the ALJ determined Frazier's RFC was applicable to Frazier's past work requirements. (Tr. 19-20). At step five, the ALJ determined Frazier's RFC was also transferrable to other occupations "existing in significant numbers in the national economy." (Tr. 20).

Frazier sought review of the ALJ's unfavorable decision with the Appeals Council on May 28, 2008. (Tr. 7-8). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears the ALJ abused his or her discretion; (2) the ALJ made an error of law in reaching his or her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After consideration of Frazier's request and arguments in light of the applicable regulations and evidence, on November 26, 2008 the Appeals Council denied Frazier's request for review, rendering the ALJ's findings and decision final agency action. (Tr. 1-3).

Frazier timely filed an appeal of the ALJ's final decision. *See* 42 U.S.C. § 405(g). Both the Commissioner and Frazier filed Motions for Summary Judgment. (Document Nos. 14 & 17). This appeal is now ripe for ruling.

The evidence is set forth in the record, pages 1 through 829. There is no dispute as to the facts contained therein.

III.    **Standard of Review of Agency Decision**

A court's review of a denial of disability benefits is limited "to determin[ing] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision, requiring the court to find the Commissioner's decision conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing," when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bown*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no

substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.3d 1137 (5th Cir. 1973)).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[,] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work[,] which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42. U.S. C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

(1) If the claimant is presently working, a finding of "not disabled" must be made;

(2) If the claimant does not have a "severe" impairment or combination of impairments, a finding of "not disabled" must be made;

(3) If the claimant has an impairment meeting or equaling an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

(4) If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

(5) If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, a finding of "disabled" must be made.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n. 2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show the claimant is capable of performing other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates other jobs are available, the burden shifts back to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

In the instant case, the ALJ found Frazier, despite his physical and mental impairments and limitations, could perform a range of light work "with an ability to lift and carry [twenty] pounds occasionally and [ten] pounds frequently with an ability to sit, stand[,] and walk [six] hours in an 8-hour workday." (Tr. 16). The ALJ noted Frazier was limited to occasional overhead lifting with his left upper extremity and "should not climb ladders, ropes, scaffolds[,] or run." (Tr. 16). The ALJ also noted Frazier "was able to bend, stoop, crouch, crawl, balance, twist[,] and squat." (Tr. 16). Finally, and most significantly, the ALJ found Frazier retained the mental ability to "get along with others, understand detailed instructions, concentrate and perform detailed tasks[,] and respond and adapt to workplace changes and supervision." (Tr. 16).

Pursuant to step four of the abovementioned five-step process, the ALJ found Frazier was not disabled as Frazier maintained an RFC enabling him to fulfill past work requirements. This Court must determine whether substantial evidence supports the ALJ's finding at the fourth step.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining, and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V.     Discussion

### A.     Objective Medical Evidence

The first factor used in determining whether substantial evidence supports the ALJ's decision is the objective medical evidence, as demonstrated by medical records contained in the administrative record.

Medical records demonstrate Frazier underwent a neuropsychiatric examination by Dr. James Carrie at the Veterans Affairs Medical Center (VAMC) in Houston, Texas on August 3, 1984. (Tr. 650). The report from this neuropsychiatric examination details Frazier's experience after returning from the Vietnam War. Dr. Carrie diagnosed Frazier with "atypical anxiety disorder with features of posttraumatic stress disorder." (Tr. 651). Dr. Carrie further noted that Frazier's mental disorder mildly impaired his ability to sustain gainful employment. (Tr. 651). At this time, Frazier exhibited antisocial behavior, impatience, and an inability to get along well with his supervisors. (Tr. 650). Frazier also reported difficulty sleeping every night, often waking up due to nightmares similar to his experiences in Vietnam. (Tr. 650). Finally, Frazier reported a fear of crowds and a preference for isolation. (Tr. 650-51). While Frazier continued to visit the

VAMC in Houston, Texas for various ailments and injuries over the years, he did not undergo any other evaluations for posttraumatic stress disorder (PTSD) again until April 23, 2002. (Tr. 530). At that time, Dr. R. Hurley examined Frazier and diagnosed him with an anxiety disorder with features of PTSD. (Tr. 537). Dr. Hurley also noted Frazier "lack[ed] a sense of being able to keep himself organized and keep a consistent long-term job." (Tr. 537). Frazier underwent a second psychological examination for PTSD on November 17, 2003 with Dr. Jocelyn B. Ulanday. Dr. Ulanday opined Frazier had "been suffering from PTSD symptoms for many years,…[which] have become worse over the past year…." (Tr. 526). Dr. Ulanday further noted Frazier's PTSD had "caused significant impairment in his social and occupational functioning" and found him "unable to obtain and maintain gainful employment in the competitive field." (Tr. 526).

The three psychological examinations are not the only medical evidence on record indicative of Frazier's mental impairment in the form of PTSD and its effect on his mental RFC. On November 27, 2001, Frazier sought treatment at the VAMC in Houston, Texas for poor sleep and recurring nightmares on a regular basis relating to his experiences in Vietnam, along with low frustration tolerance levels and an inability to be around crowds or social groups. (Tr. 407). In her assessment, Nurse Ethel Williams and Dr. Dionisio Alquiza noted Frazier was experiencing PTSD and prescribed him Trazodone.[2] (Tr. 407). Frazier was also given information on a trauma recovery program organized by the VAMC. (Tr. 407). Frazier was screened for PTSD by the VAMC in order to participate in the trauma recovery program  on December 10, 2001. (Tr. 403). Frazier was noted as having PTSD and the VAMC scheduled him

---

[2] Trazodone is an antidepressant of the serotonin antagonist and reuptake inhibitor class. It is often prescribed to those suffering from severe depression, insomnia, or, as here, sleeplessness due to persistent nightmares or other sleep disturbances.

to meet with a treatment team to develop a personal plan for his treatment. (Tr. 403). In the trauma recovery program's initial evaluation on February 11, 2002, Frazier's diagnosis was also identified as PTSD. (Tr. 394). Over the course of the following months, Frazier attempted to gain control over his PTSD by attending PTSD education sessions. (Tr. 376-88). However, the group sessions did not help Frazier and he opted to seek individual therapy. (Tr. 373). Additionally, despite the Trazodone, Frazier stated he continued to have recurrent nightmares relating to his experience in Vietnam multiple times per week. (Tr. 356). In fact, by August 19, 2003, Frazier and his wife separated. (Tr. 341). Frazier opined his "yelling and fighting in [his] sleep" probably led to the separation. (Tr. 341).

By April 28, 2005, Frazier continued to experience poor sleep and nightmares two to three times per week due to dreams about Vietnam. (Tr. 289). Additionally, Frazier reported he sometimes would forget what he was doing. (Tr. 231). Finally, on September 18, 2006, Frazier was given a rating of 100% disability by the VAMC, 70% of which was attributed to PTSD. (Tr. 218-222). There was no medical expert testimony at the hearing before the ALJ.

The ALJ's mental RFC assessment is not supported by substantial evidence on the record. When making a mental RFC assessment, the regulations require the ALJ look for impairments in activities of daily living; social functioning; and concentration, persistence, and pace by rating them as "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 404.1520a. The ALJ must also determine the number of episodes of decompensation the claimant experienced during the relevant time period. 20 C.F.R. § 404.1520a. The ALJ determined Frazier experienced only "mild" limitations on his social functioning, as evidenced by his ability to care for his son, take walks, and cook. However, the testimony and medical evidence on record contradict this determination. In his 1984 evaluation, Frazier stated he could

not get along well with others, finding himself impatient and quick to "fl[y] off the handle." (Tr. 650). Frazier also stated his attitude had changed as he became more introverted and would run or crouch at sudden sounds, thinking he was still in Vietnam. (Tr. 650-51). Frazier's change in personality upon return form Vietnam, as evident in the evaluation from 1984, began well before Frazier's last date insured. His continued treatment for similar behavior and attitudes, beginning with his most recent evaluations in 2002 and 2003, indicate the pervasive and continued nature of Frazier's PTSD. Indeed, "once evidence has been presented which supports a finding…a given condition exists it is presumed in the absence of proof to the contrary…the condition has remained unchanged." *Loza v. Apfel*, 219 F.3d 378, 395-96 (5th Cir. 2000) (citing *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)). The evidence in the record does not demonstrate Frazier did not continue suffering from PTSD nor does the evidence demonstrate his PTSD improved. In fact, as of 2005, Frazier reported continued recurrent nightmares two to three times per week, suggesting a worsening of Frazier's ongoing PTSD symptoms. (Tr. 289).

Certainly, as the Commissioner argues, Frazier was not specifically diagnosed with PTSD within the relevant time period. However, PTSD is a unique mental impairment, the characteristics of which must be taken into consideration when making a determination on its limiting impact on a claimant's abilities. In fact, "retrospective medical diagnoses of PTSD, even if uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed periods of disability, can support a finding of past impairment." *Loza*, 219 F.3d at 396; *see also Likes v. Callahan*, 112 F.3d 189, 190 (5th Cir. 1997). In *Loza*, the claimant was given a service connected 100 percent disability rating by the VAMC, was found to be unable to return to full employment, was consistently diagnosed with PTSD, among other mental

impairments, was regularly prescribed antipsychotic and antidepressant drugs, and was unable to maintain social interactions. *Loza*, 219 F.3d at 394.

Similarly, Frazier was given a service connected 100 percent disability rating by the VAMC, albeit after the relevant time period, 70 percent of which was due to PTSD. (Tr. 218). Additionally, in the 1984 evaluation, Dr. Carrie found his mental impairment limited his ability to sustain gainful employment. (Tr. 651). In 2002 and 2003, Drs. Hurley and Ulanday similarly found Frazier's mental impairment to be a barrier to his obtaining and maintaining gainful employment. (Tr. 537; Tr. 526). As evidenced by his extensive medical file from the VAMC, Frazier was also consistently prescribed medication for sleeplessness due to his PTSD, as well as for resulting depression. Finally, evidence on the record indicates Frazier was unable to maintain interpersonal relationships, as evidenced by his wife separating from him due to his PTSD-related behavior. (Tr. 341). Frazier's experience closely mirrors the experience of Loza. *See Loza*, 219 F.3d at 394. Thus, the record demonstrates and could support a retrospective diagnosis of PTSD within the relevant time period. As the extensive objective medical evidence on Frazier's interactions with others were not taken into account by the ALJ, the ALJ's mental RFC assessment is not supported by substantial evidence.

### B.   Diagnoses and Expert Opinions

The second factor used in determining whether substantial evidence supports the ALJ's decision is evidence of diagnoses and expert opinions from treating and consulting physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the

opinion must be more than conclusional and must be supported by laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

With no medical opinions in the record in the form of a physician reviewing Frazier's entire medical file or of a medical expert testifying at the administrative hearing, the conclusions of Frazier's treating physicians are of particular importance. Three different treating physicians at the VAMC discussed Frazier's employment prospects and mental impairment: Dr. Carrie (of the 1984 neuropyschiatric evaluation), Dr. Hurley (of the 2002 evaluation), and Dr. Ulanday (of the 2003 evaluation). Each of these treating physicians commented on Frazier's impairment and on Frazier's inability to obtain and maintain substantial gainful employment.

Dr. Carrie, in his neuropsychiatric examination of Frazier in 1984, opined Frazier's ability "to sustain gainful employment [was] mildly impaired" by his PTSD. (Tr. 651). Over the years, as evidenced by Frazier's medical records, Frazier's ability to sustain employment decreased due to his persistent PTSD symptoms and experiences, including antisocial behavior,

an inability to maintain working relationships with colleagues and superiors, along with such problems as sleeplessness and instinctive reactions to planes flying overhead and loud, booming noises.

In 2002, Dr. Hurley evaluated Frazier for his continuing PTSD. In the report, Dr. Hurley noted Frazier had a "significant inability to keep a job," giving him a global assessment of functioning (GAF) rating of 55.[3] (Tr. 537). A GAF of 55 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, which may be demonstrated by few friends and an inability to maintain interpersonal relationships with co-workers and peers. (DSM-IV, TR pg. 34). Dr. Hurley qualified this rating by noting Frazier had "moderate [to] severe symptoms in the areas of socialization and employment," although competent to manage his funds. (Tr. 537).

By 2003, Frazier's GAF lowered 10 points, indicating an increased severity in his symptoms. (Tr. 526). Dr. Ulanday evaluated Frazier to review his PTSD and determined his PTSD had "become worse over the past year" with feelings "of detachment from others" and with a "restricted affect....[P]ersistent difficulty with sleep," and increased irritability. (Tr. 526). Additionally, Dr. Ulanday noted Frazier's increased problems with concentration and also an increase in "exaggerated startle response[s]." (Tr. 526). From this evaluation, Dr. Ulanday reported Frazier "is unable to obtain and maintain gainful employment in the competitive field." (Tr. 526).

_____

[3] The Global Assessment of Functioning Scale is used to determine the psychological, social, and occupational functioning of a given individual on a hypothetical continuum of mental health-illness. Physical and environmental limitations are not included in this assessment. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* [34] (4th ed. text rev. 2000).

In fact, the vocational expert ("VE") involved in Frazier's case testified at the administrative hearing Frazier would be unable to maintain substantial gainful employment due to his mental impairment and its effect on his ability to perform the requirements of even the most basic of jobs. Frazier's attorney posed a hypothetical to the VE with circumstances and limitations similar to Frazier's: inability to concentrate (Tr. 526) and inability to maintain interpersonal relationships with co-workers pursuant to workplace rules. Frazier's attorney asked the VE whether there would be jobs such an individual could perform. In response to each of the attorney's hypothetical circumstances, the VE responded the individual would not be able to maintain any job in the national economy. (Tr. 81-82).

The ALJ, however, deemed Frazier to have a mental RFC capable of allowing him to maintain sufficient concentration and relationships required in the employment context. Despite the reports from treating physicians and the VE stating Frazier would be unable to obtain and maintain substantial gainful activity or employment due to his impaired social functioning, the ALJ determined otherwise. This was in error as the ALJ's assessment of Frazier's mental RFC was not based on substantial evidence in the record.

As the Commissioner points out, the VAMC's disability rating given to Frazier is not binding on the Commissioner. However, it is evidence "entitled to great weight and should not have been disregarded by the ALJ." *Loza*, 219 F.3d at 394-95; *see also Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972). Indeed, "[t]his court has repeatedly held that ordinarily the opinions, diagnoses[,] and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability." *Loza*, 219 F.3d

at 394-95 (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). The ALJ did not even mention the opinions and diagnoses of two out of three of Frazier's treating physicians with regards to his mental capacity, citing this treatment was "after the claimant's date last insured." (Tr. 17). However, as discussed above, PTSD may be retrospectively diagnosed, meaning the opinions and diagnoses of Frazier's later treating physicians are as equally entitled to consideration as the opinions and diagnoses of Frazier's prior physicians. Thus, the ALJ's assessment of Frazier's mental RFC was not based on substantial evidence in the record.

Furthermore, and as to Frazier's second point of error, the ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits," and if "the ALJ does not satisfy his duty, his decision is not substantially justified." *Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). In this circumstance, the ALJ did not obtain a medical expert nor did the ALJ require Frazier to undergo a psychiatric evaluation in order to make a full determination as to his mental impairments and a date of onset. Because the ALJ did not do so, the ALJ failed to comply with his duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits," and therefore, "his decision is not substantially justified." *Id.*

## C.    Subjective Evidence of Pain

The third element used in determining whether substantial evidence supports the ALJ's decision is subjective evidence of the claimant's pain, as demonstrated by the claimant's testimony and any corroboration by family and friends. Not all pain is disabling, and the fact a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides allegations of pain do not

constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment reasonably expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment limiting the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Frazier's extensive medical records indicate the severe nature of Frazier's PTSD experience and its pervasive effect throughout his life, as well as the lives of his family members. Frazier's testimony at the administrative hearing also indicates the severe nature of Frazier's mental impairment.

In his 1984 neuropsychiatric examination, Frazier detailed his daily experiences and realities stemming from his PTSD. Frazier stated he "gets jumpy and jittery for no reason," "does not like to have someone come up behind him," and "becomes fearful in a crowded situation." (Tr. 650). Additionally, Frazier noted his preference for being by himself, rather than with a group of peers and colleagues. (Tr. 650-51). Finally, Frazier told of his negative experience with his supervisors at work, noting he was impatient and would "fl[y] off the handle real fast." (Tr. 650). Frazier's experience in social situations, as noted in 1984, which is prior to the relevant time period, is a clear indication of a severe mental impairment.

In the 2002 PTSD evaluation by the VAMC in Houston, Texas, Dr. Hurley noted Frazier's comments regarding his PTSD experience. (Tr. 530-38). In this evaluation, Frazier noted he was unaware of PTSD, as a medical condition, until the fall of 2001 and thus, did not seek treatment for what he was experiencing until around this time. (Tr. 533). However, Frazier stated he was experiencing nightmares, flashbacks, and could constantly smell burning flesh ever since he returned from his tour of Vietnam. (Tr. 533). Frazier noted his inability to maintain steady employment seemed due to his inability to adjust to the workplace, as he described it to be different than his experience of working in the military. (Tr. 535).

In the 2003 review evaluation of Frazier's PTSD, Dr. Ulanday noted Frazier's experiences and PTSD had worsened, causing greater impairment in his social abilities and employability. Frazier complained of continued poor sleep, waking up "every two hours because he [couldn't] breathe" and due to his persistent perceiving of the smell of burning bodies almost every night, requiring him to put Vicks VapoRub on his nose in an attempt to thwart the scent. (Tr. 521). Frazier's statements indicated increased introversion as he stated he "does not like 'to be around nobody,'" preferring to stay away from crowds and noise. (Tr. 522). Frazier also indicated increased outbursts of anger and feelings of jumpiness. (Tr. 522). Frazier also indicated he had become more forgetful, misplacing his belongings more often than in the past, and often finding himself in a location different than he intended when driving. (Tr. 522). Indeed, Frazier's statements indicated his PTSD had escalated and had become more pronounced in his later years.

Frazier's 2003 PTSD evaluation also contained reports of his experiences after returning from Vietnam and attempting to reenter the workforce. Frazier indicated "he wasn't friendly" at work as he "wanted to be left alone." (Tr. 524). Frazier also stated he often found himself in verbal altercations with co-workers, often leading him to quit because he felt "they couldn't

understand [him]." (Tr. 524).  Indeed, Frazier admitted he is "moody, likes to be by himself, and will leave without notice." (Tr. 525). Frazier's continuous statements regarding his inability to cope and function in the workplace due to his PTSD are indicative of a severe mental impairment.

Finally, Frazier's testimony at the administrative hearing is the clearest indicator of his mental impairment and its impact on his social and employment capacities. For example, Frazier testified he began experiencing sleeping and socialization problems upon his first day back from Vietnam. (Tr. 67-68). Frazier testified he had trouble sleeping from his first day back in the United States due to the smell of burnt bodies and the experiences he had while in Vietnam, often only being able to sleep for three to four hours at a time. (Tr. 67). Frazier also testified as to how his family perceived him upon his return. Frazier testified his family and friends said "[he] wasn't the same person....[he] was withdrawn, [he] didn't socialize. [He] didn't have friends." (Tr. 68). Frazier also testified how his change in personality negatively affected his ability to cooperate and maintain the relationships necessary for proper functioning in society and in the workforce. Frazier testified he got into many arguments upon his return due to his "short fuse," as "[there is] no telling when or what might be said. The smallest thing can...set [him] off." (Tr. 68). Frazier also testified to continued outbursts of anger, which he stated had begun upon his return from Vietnam. (Tr. 69-70). Frazier's testimony also indicated his difficulty in the workplace as he was unable to transition between the behavior required by the military and the behavior expected in the civilian workplace. (Tr. 71). Finally, Frazier testified to problems with his concentration while working. He stated his "mind would just go blank. And [he]...just went off and thinking about the past." (Tr. 71). Frazier's testimony regarding his inability to sustain

the appropriate relationships necessary for employment in the workplace, as well as his inability to keep his mind on the tasks assigned by his superiors, indicate his severe mental impairment.

It is, however, important to differentiate between the functioning relationships he describes between his family members and those troubled relations he experienced with co-workers and superiors. These two types of relationships function differently and require different capacities from Frazier. Of his family members, he is trusting and caring, as they are known persons who he likely trusts will not take advantage of him. Of his co-workers, he is hesitant to trust due to his past experience in employment upon his return from Vietnam. Indeed, his co-workers had called Frazier a "baby killer[]" and a "drug addict[]" upon his reentry into the civilian work force. (Tr. 66). Functioning relationships with family members do not predict functioning relationships in the workplace.

The ALJ's assessment of Frazier's mental RFC and his ability to sustain gainful employment are not supported by substantial evidence in the record. Indeed, all of the evidence in the record points to the opposite conclusion. Frazier has continually been unable to maintain employment relationships, has indicated antisocial and introverted behavior, and has testified to his inability to concentrate on assigned tasks due to his flashbacks and recurring memories of his experiences in Vietnam. The ALJ references Frazier's capacity to engage in activities of daily living to support his conclusion Frazier retains the mental RFC to pursue gainful employment. (Tr. 17). However, the activities Frazier described are consistent with his testimony regarding his antisocial and introverted behaviors, which have proved a severe limitation on his ability to sustain gainful employment, as amply supported by the record. Frazier indicated he enjoyed staying at home or taking walks in the woods, tending to be by himself and away from the crowds and people he was unable to integrate with upon his return from Vietnam. These

behaviors are consistent with his PTSD experience. The ALJ did not comment on the veracity of Frazier's testimony regarding his mental impairment and the extent of its limitations on his daily functioning. Indeed, the ALJ stated Frazier's testimony "concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not credible" with regards only to his physical limitations, without commenting on Frazier's testimony regarding his mental capacity. (Tr. 17-19). Thus, the ALJ's assessment is not supported by substantial evidence in the record.

### D.    Education, Work History, and Age

The fourth and final element used in determining whether substantial evidence supports the ALJ's decision is the claimant's educational background, work history, and present age. A claimant will be determined to be under a disability only if the claimant's physical or mental impairments are of such severity he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

At the time of the administrative hearing on April 11, 2008, Frazier had just turned 60 years old, had a twelfth grade education, and three years of college, as based on his testimony. (Tr. 78). With this on record, the ALJ posed three hypothetical questions to the VE to determine whether any suitable work existed in the national economy for Frazier. In each hypothetical, the ALJ asked about an individual of a younger age, an individual closely approaching advanced age, and an individual of retirement age. (Tr. 78).

In the first hypothetical, the ALJ noted the following circumstances:

12th grade education, and three years of college based on his testimony. And exertional ability to occasionally lift 50 pounds, 25 pounds frequently, with a walking ability of – sit, stand, walk ability of six of eight hours. Push, pull[,] and gross, fine is unlimited. Can occasionally climb stairs, but no ladders, ropes, scaffolds[,] or running. Can bend, stoop, crouch, crawl, balance, twist[,] and squat. From a mental standpoint, he has the ability to get along with others, he can understand detailed instructions. He can concentrate and

perform detailed tasks and respond and adapt to work place changes and supervision. There is some minimal limitation in the right knee, and occasional overhead lifting of the left extremity. Okay. Based on that hypothetical, can you make an assessment as the ability to do kinds of work? (Tr. 78).

The VE testified Frazier would be permitted to perform all of his past work, as well as transfer his skills in "communicating, guiding, directing, supervising, ordering, processing, record checking, selling, administrating, [and] report writing," among others. (Tr. 79). The VE testified these skills would be transferrable to an occupation requiring a sedentary exertional level. (Tr. 79). However, the ALJ's hypothetical facts are contrary and unsupported by the record. For example, in the 2003 PTSD evaluation, Frazier stated he could not concentrate on a given task and was prone to intrusive thoughts on a daily basis. (Tr. 523). The ALJ's hypothetical also stated the hypothetical individual could "get along with others." (Tr. 78). The record is replete with evidence directly contrary to this statement. Indeed, even in 1984 Frazier stated he was having difficulty getting along with his colleagues and supervisors. (Tr. 650). Thus, the ALJ's first hypothetical is unsupported by the record.

In the second hypothetical, the ALJ adjusted the circumstances to allow for an occasional lifting of 20 pounds, 10 pounds frequently, and a mental capacity to perform simply tasks. (Tr. 80). The VE testified such a hypothetical individual would not be able to perform any past work. (Tr. 80). The VE did testify the hypothetical individual would be able to perform "[l]ight, unskilled employment." (Tr. 80). Again, as the ALJ's second hypothetical included the same functioning capacity as the first hypothetical, including the ability to concentrate and get along well with others, this hypothetical is unsupported by the record.

In the third hypothetical, the ALJ adjusted the circumstances to allow for the individual to perform detailed work at a light level, instead of simple tasks. (Tr. 80). The VE testified the hypothetical individual would be able to perform past work and skills would be transferable.

At this point, Frazier's attorney questioned the VE regarding the hypothetical individual's abilities in the workplace, taking into account such experiences as losing focus and an inability to adapt to the workplace due to a change in personality, experiences identical to those testified to by Frazier at the same administrative hearing and during past psychological evaluations. (Tr. 81-82). When presented with a hypothetical in which the individual could not stay focused on a given task or complete a given task in a timely manner, the VE testified the individual likely could not maintain given employment. (Tr. 81-82). Additionally, when presented with a hypothetical in which the individual could not follow the rules and requirements as set out by supervisors, the VE testified the individual would not be able to sustain gainful employment. (Tr. 82).

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is…he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). In this case, the ALJ relied on an erroneous hypothetical question posed to the VE, which incorporated facts unsupported by the record. Indeed, nothing in the record supports the ALJ's inclusion of hypothetical facts such as "get[s] along well with others" and "can concentrate and perform detailed tasks and respond and adapt to work place changes and supervision." (Tr. 78). As noted above, the ALJ's mental RFC assessment of Frazier was not supported by substantial evidence in the record and therefore, indicates the erroneous nature of the hypothetical questions posed to the VE. Given the ALJ's incomplete hypothetical questions,

which did not include all of the limitations resulting from physical and mental impairments as supported by substantial evidence in the record and, in fact, included facts completely unsupported by the record, the education, age, and work history factor does not support the ALJ's decision.

## VI.    Conclusion

Considering the record as a whole, this Court is of the opinion the ALJ and the Commissioner did not properly use the guidelines propounded by the Social Security Administration at step four and substantial evidence does not support the ALJ's step four assessment regarding Frazier's mental RFC. Therefore, the Court

ORDERS Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 17) is DENIED, and this case is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation, including an assessment of Frazier's mental RFC at step four and, if necessary, a consultative psychiatric examination.

Signed at Houston, Texas, this 18th day of June        , 2010.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE